UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| KEVIN SANDERSON, D/B/A ACCESS EVERYWHERE HOME SENIOR CARE, | ) ) ) | |
| Plaintiff, | ) ) | |
| V. | ) ) | CASE NO. 21-6014 |
| MCHENRY VILLA, LLC, | ) ) ) | |
| Defendant | ) | |

**COMPLAINT FOR INTENTIONAL INTERFERENCE WITH A CONTRACT, INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE AND FALSE LIGHT INVASION OF PRIVACY**

NOW COMES, KEVIN SANDERSON, D/B/A ACCESS EVERYWHERE HOME SENIOR CARE, by and through his counsel, LAW OFFICES OF ROBERT T. HANLON AND ASSOCIATES, P.C., with his complaint against Defendant, MCHENRY VILLA, LLC, and in support thereof, states as follows:

**PARTIES CITIZENSHIP – COMPLETE DIVERSITY**

1. Plaintiff, KEVIN SANDERSON, is a Canadian citizen.

2. Defendant, MCHENRY VILLA, LLC, is a Minnesota limited liability company. Upon information and belief each of its members are citizens of the State of Minnesota. Defendant maintains its principal office at 12900 Whitewater Drive, Suite 201, Minneapolis, MN 55343.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the matters in controversy in this case based upon Diversity Jurisdiction pursuant to United States Code 28 U.S.C. 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District and, as discussed above, because Defendant is subject to this Court's personal jurisdiction in this District.

## SHORT STATEMENT OF THE CASE

5. Plaintiff is engaged in the home healthcare support business providing caregivers to aid individuals with independent living. Each client (or his or her authorized representative) executed a contract with Plaintiff for the client's individual independent care needs. Plaintiff in turn informed Defendant who operates an "independent living" facility under the name McHenry Villa of its contractual relationships. The residents (or his or her authorized representative) of McHenry Villa contract for their own services independent of McHenry Villa. However, Defendant, MCHENRY VILLAS, LLC, via its agents sent letters to each of Plaintiff's clients informing them that McHenry Villa had decided that it would replace Plaintiff with another company as the provider of in-home care to each of Plaintiff's customers who resided in the apartment complex known as McHenry Villa in McHenry, Illinois. Each customer in McHenry Villa in turn terminated the respective contract for services with Plaintiff. A majority of Plaintiff's caregivers were then hired by the replacement entity, HOME INSTEAD, selected by Defendant. Upon information and belief Defendant provided to the new company the names of Plaintiff's employees and Plaintiff's clients to the third-party replacement company, HOME INSTEAD, of Crystal Lake, Illinois.

## COUNT I
## INTENTIONAL INTERFERENCE WITH CONTRACTS

6. Plaintiff incorporates each of the allegations of paragraphs 1-5 within this Count I.

7. At issue in this case are contracts for care giving to the following persons:

    a    Laura Barnett, contract dated April 19, 2019;

    b    Rochelle Clark, contract dated September 11, 2020;

|   |   |   |
|---|---|---|
| | c | Jean Furuta, contract dated December 14, 2020; |
| | d | Gerard Hansel, contract dated September 5, 2020; |
| | e | Linda Hansel, contract dated September 5, 2020; |
| | f | Jean Nita, contract dated September 23, 2019; |
| | g | Mary Pauley, contract dated December 15, 2020; |
| | h | Geraldine Schultz, contract dated December 21, 2020; |
| | i | Jeremy Sepanik, contract dated April 19, 2019; |
| | j | Nancy Stylar, contract dated June 8, 2019; |
| | k | Jeanne Hartman, contract dated April 19, 2019; |
| | l | Elaine Summerhill, contract dated October 6, 2020. |

8. Each of the aforementioned contracts was valid and enforceable and were contracts between Plaintiff and persons, not Defendant.

9. Defendant was aware of the contractual relationships by virtue that Plaintiff had provided copies of the contracts to Defendant, MCHENRY VILLAS, LLC, at or about the time the contracts were executed.

10. Defendant intentionally and unjustifiably induced a breach of each of the contracts referenced hereinabove;

11. Each of the contracting parties then terminated their contract with Plaintiff

12. Plaintiff suffered an injury caused by Defendant's wrongful conduct.

13. Plaintiff suffered damages resulting from the wrongful conduct of Defendant.

14. Defendant lacked any privilege as to its interference with Plaintiff's contracts.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

    A. Award Plaintiff compensatory damages including actual, consequential, incidental damages in an amount to be determined by a jury at trial for the damages caused, as well as past and prospective financial losses in an amount not less than $1,000,000.00;

      B.      Award punitive damages to the maximum amount allowable; and

      C.      Grant such other and further relief as this Court deems appropriate and necessary.

## COUNT II
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

15.      Plaintiff incorporates each of the allegations of paragraphs 1-14 within this Count II.

16.      Defendant was fully aware of Plaintiff's business in providing in-home care.

17.      Plaintiff had a reasonable expectancy of entering into a valid business relationship with future residents of McHenry Villa, because Plaintiff had agreed to staff caregivers 24/7 within McHenry Villa.

18.      Defendant had knowledge of Plaintiff's expectancy by virtue of Plaintiff's delivery of contracts and Plaintiff's attendance at weekly meetings with Defendant's employees wherein they would share information concerning resident needs. Moreover, Defendant's marketing director would send e-mails concerning Plaintiff's expectancy. Furthermore, Defendant maintained a pullcord system which Plaintiff's employees manned and responded to in the event a cord was pulled.

19.      Defendant intentionally and unjustifiably interfered with Plaintiffs' business by inducing his employees to terminate their employment with Plaintiff and by sending letters to Plaintiff's customers to give the appearance that Plaintiff was no longer in business.

20.      As a result of a scheme and artifice created by Defendant, the Defendant then induced or caused a termination of Plaintiff's expectancy.

21.      As a result of Defendant's wrongful conduct, Plaintiff suffered damages resulting from Defendant's interference.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

    A. Award Plaintiff compensatory damages including actual, consequential, incidental damages in an amount to be determined by a jury at trial for the damages caused, as well as past and prospective financial losses in an amount not less than $1,000,000.00;

    B. Award punitive damages to the maximum amount allowable; and

    C. Grant such other and further relief as this Court deems appropriate and necessary.

**COUNT III**
**FALSE LIGHT INVASION OF PRIVACY**

22. Plaintiff restates and re alleges paragraphs 1-21 as if fully set forth in this Count III.

23. On or about March 16, 2021, Defendant sent a letter to each of Plaintiff's clients imputing that Plaintiff was not going to be present to meet the demands of Plaintiff's clients and pointedly stated "Effective April 16, Access Everywhere Senior Home Care will no longer be located on site at McHenry Villas" which was a false statement.

24. Upon information and belief, at or about the same time as Defendant issued its March 15, 2021 letter to Plaintiff's customers, Defendant provided to "Home Instead" (a competitor of Plaintiff) the contact information for Plaintiff's customers or their representatives.

25. The false light of Defendant's letter of March 15, 2021 implies that Plaintiff was no longer in business and would not serve Plaintiff's customers' needs.

26. Defendant then scheduled meetings between Plaintiff's customers and HOME INSTEAD.

27. These meetings were conducted to impute that Plaintiff was no longer serving his customers.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

  A. Award Plaintiff compensatory damages including actual, consequential, incidental damages in an amount to be determined at by a jury at trial for the damages caused, as well as past and prospective financial losses in an amount not less than $1,000,000.00;

  B. Award punitive damages to the maximum amount allowable; and

  C. Grant such other and further relief as this Court deems appropriate and necessary.

## **JURY TRIAL DEMANDED**

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this action.

Respectfully submitted,

By: */s/Robert T. Hanlon*
Robert T. Hanlon, Esq.

Member of the Trial Bar of the United States District Court for the Northern District of Illinois

Robert T. Hanlon, Attorney for Plaintiff
Law Offices of Robert T. Hanlon & Assoc., P.C.
131 East Calhoun Street
Woodstock, IL 60098
(815) 206-2200; (815) 206-6184 (Fax)
robert@robhanlonlaw.com